**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRAD NOURSE, both individually and on behalf of a
class of others similarly situated,

No. 17-cv-0807 (BKS/DJS)

Plaintiff,

v.

THE COUNTY OF JEFFERSON,

Defendant.

---

**APPEARANCES:**

*For Plaintiff:*
Elmer Robert Keach, III
Maria K. Dyson
Law Offices of Elmer Robert Keach, III, PC
One Pine West Plaza, Suite 109
Albany, New York 12205

*For Defendant:*
Mitchell J. Katz
Teresa M. Bennett
Menter, Rudin & Trivelpiece, P.C.
308 Maltbie Street, Suite 200
Syracuse, New York 13204

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiff Brad Nourse brings this proposed class action under 42 U.S.C. § 1983 against

Defendant County of Jefferson, New York, alleging that his Fourth Amendment right against

unreasonable searches was violated when he was strip searched during intake processing at the

Jefferson County Jail without being provided reasonable time to post bail.  (Dkt. No. 1).

Defendant now moves to dismiss Plaintiff's claim under Federal Rule of Civil Procedure

12(b)(6), (Dkt. No. 5), and Plaintiff has opposed the motion, (Dkt. No. 11).  For the reasons that follow, Defendant's motion is denied.

## II.    FACTS[1]

Plaintiff was arrested on July 21, 2014 in Leray, New York on a bench warrant that had been issued after he missed a court appearance related to an earlier charge of misdemeanor aggravated unlicensed operation of a motor vehicle.  (Dkt. No. 1, ¶ 31).  He was arraigned at Leray Town Court, assessed a bail amount of $500, and transported to the Jefferson County Jail in Watertown.  (*Id.*).  "At the time of Mr. Nourse's arrest, one of his friends was on the way to the Town of Leray to post his bail."  (*Id.*).  "Immediately" upon arriving at the Jefferson County Jail, Plaintiff was "taken by a Corrections Officer to a room, and ordered to take off all his clothes."  (*Id.* ¶ 32).  Plaintiff "objected to this procedure," "indicated that his friend was on the way [to the jail] . . . to post his bail," and asked to wait at the jail until his bail was posted.  (*Id.*).  The Corrections Officer declined to do this; he instructed Plaintiff to "remove all his clothes . . . bend at the waist and spread the lobes of his buttocks to allow for visual inspection of the outside of [his] anal cavity."  (*Id.*).  Plaintiff was also "required to manipulate his genitals to allow for the inspection of the area underneath his scrotum."  (*Id.*).  He "then put his civilian clothes back on," (*id.*), and shortly thereafter, the $500 bail amount was posted, and Plaintiff was released

---

[1] The following allegations, which are taken from the Complaint, are assumed to be true for purposes of this motion.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Defendant has attached a number of documents to its motion to dismiss, including an affidavit of Corrections Lieutenant Kristopher Spencer, (Dkt. No. 5-1), an attorney affidavit, (Dkt. No. 5-2), and a transcript of Plaintiff's 50-h hearing testimony, (Dkt. No. 5-4).  The Court has not reviewed or considered these materials in deciding the instant motion.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (when deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").  "A court may treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment if it considers matters outside of the pleadings, but the court must give adequate notice to the opposing party."  *Palomo v. Demaio*, No. 15-cv-1536, 2017 WL 401240, at *5, 2017 U.S. Dist. LEXIS 11963, at *12 (N.D.N.Y. Jan. 30, 2017) (citing *Gordon v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)).  Given the fact-sensitive nature of Plaintiff's claim, and since discovery has not yet commenced, the Court declines to convert Defendant's motion to one for summary judgment.  *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) ("The Court also declines to convert the instant motion into a motion for summary judgment since discovery has not yet commenced.").

from custody, (*id.* ¶ 33).  Altogether, Plaintiff was at the jail for approximately thirty minutes.
(*Id.*).  As a result of the strip search,[2] Plaintiff "has suffered and continues to suffer
psychological pain, humiliation, suffering and mental anguish."  (*Id.* ¶ 34).

Plaintiff alleges that his experience at the Jefferson County Jail is the result of a "written
and/or *de facto* policy, custom or practice of immediately strip searching all individuals who
enter the custody of the Jefferson County Jail, regardless of the nature of their charged crime and
without providing them with a reasonable opportunity to post bail."  (*Id.* ¶ 22).  Plaintiff further
alleges that strip searches "are done . . . regardless of [a detainee's] bail status, their ability to
post bail, or whether or not a bail payment is forthcoming."  (*Id.* ¶ 24).  Finally, Plaintiff alleges
that because Jefferson County "has a limited number of detentions per day" and "adequate space
in its jail booking room," detainees could be held for a "short period of time, e.g., up to four
hours, in the jail booking area (and separate from the general population of the Jefferson County
Jail), to allow them an opportunity to post bail before having to be strip searched."  (*Id.* ¶¶ 22,
23).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim
to relief that is plausible on its face.'"  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d
129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The
plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative

---

[2] The parties have employed the terms "strip search" and "visual cavity search" somewhat interchangeably.  As the
Second Circuit has explained, "(1) a 'strip search' occurs when a suspect is required to remove his clothes; (2) a
'visual body cavity search' is one in which the police observe the suspect's body cavities without touching them (as
by having the suspect bend over, or squat and cough, while naked); (3) a 'manual body cavity search' occurs
when the police put anything into a suspect's body cavity, or take anything out."  *Gonzalez v. City of Schenectady*,
728 F.3d 149, 158 (2d Cir. 2013).  The Complaint alleges that Plaintiff was subjected to a strip search and visual
body cavity search, but for the sake of clarity, Plaintiff refers to strip searches and "visual body cavity searches
(visual inspection of the vaginal and rectal cavities)" collectively together as "strip searches."  (Dkt. No. 1, ¶ 24).
For the limited purpose of this discussion, the Court adopts that consolidated definition here as well.

level." *Id.* (quoting *Twombly*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## IV.    DISCUSSION

Defendant argues that the Complaint fails to state a claim for a Fourth Amendment violation because the "Supreme Court of the United States has upheld the constitutionality of blanket strip/visual body cavity searches."  (Dkt. No. 5-6, at 12).  Defendant therefore asserts that there is "nothing unconstitutional about the alleged policy of the County in strip/body cavity searching the Plaintiff or the proposed class."  (Dkt. No. 5-6, at 12).  Plaintiff argues that there is no legitimate penological need to strip search detainees who can promptly post bail.  (Dkt. No. 11, at 7–12).  Plaintiff also argues that, "because he was not going to be entering the general population of the facility in any event," Defendant could have accommodated Plaintiff's "right to be free of an unjustified strip and visual cavity search" by allowing him to "sit in a holding cell for a reasonable period until his bail was posted."  (Dkt. No. 11, at 6–7).

The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."  *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328 (2012).  A prison regulation that impinges on inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Determining whether a strip search is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the

justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In *Florence*, the Supreme Court considered "whether every detainee who will be admitted to the general population may be required to undergo a close visual inspection while undressed" during the inmate intake process.  566 U.S. at 322.  There, Florence was arrested on a bench warrant stemming from his failure to appear at a hearing to enforce a fine.  *Id.* at 323.  During intake processing, "prior to [his] admission to the general population" in two different facilities, he was subjected to searches that required him to, *inter alia*, "lift his genitals, turn around, and cough in a squatting position."  *Id.* at 324–25.  "This policy applied regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history."  *Id.* at 324.  After the strip search at the second facility, Florence was admitted to general population and "released the next day, when the charges against him were dropped."  *Id.*

The Supreme Court held that the jails' policies, which permitted strip searches during the intake process, even without reasonable suspicion of concealed contraband, did not violate inmates' constitutional rights.  *Id.* at 339.  Justice Kennedy, writing for the majority, explained that "there is no mechanical way to determine whether intrusions on an inmate's privacy are reasonable," and that any analysis of the "need for a particular search must be balanced against the resulting invasion of personal rights."  *Id.* at 327.  This task "of determining whether a policy is reasonably related to legitimate security interests is 'particularly within the providence and professional expertise of corrections officials.'"  *Id.* at 328 (quoting *Bell*, 441 U.S at 548).  Justice Kennedy further explained that, historically, the Court "has repeated the admonition that, 'in the absence of substantial evidence in the record to indicate that the officials have

exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.'" *Florence*, 566 U.S. at 328 (quoting *Block v. Rutherford*, 468 U.S. 576, 584–585 (1984)).  This is due to numerous and ever-changing "risks for facility staff, for the existing detainee population, and for a new detainee himself or herself" both during and after the intake process.  *Id.* at 330.  These risks are present regardless of the severity of the crime for which the detainee was arrested, because of the reality that even non-felons "can turn out to be the most devious and dangerous criminals" or "may be coerced into" concealing items by others, even though they "do not themselves wish to introduce contraband into a jail."  *Id.* at 334–35. And, these risks are not easily mitigated due to the difficult nature of classifying "inmates by their current and prior offenses before the intake search."  *Id.* at 336.  Justice Kennedy concluded that, because "[o]fficers who interact with those suspected of violating the law have an essential interest in readily administrable rules," requiring officials in charge of jails to "conduct less thorough inspections" of "any suspected offender who will be admitted to the general population in their facilities" would only serve to "limit the intrusion on the privacy of some detainees . . . at the risk of increased danger to everyone in the facility, including the less serious offenders themselves."  *Id.* at 338.  Thus, these risks "offer significant reasons why the Constitution must not prevent them from conducting the same search on any suspected offender who will be admitted to the general population in their facilities."  *Id.* at 338.

To plead a Fourth Amendment violation, "an inmate challenging a strip search must ultimately meet the burden of establishing that the search at issue was unreasonable, and for such a claim to survive a motion to dismiss, the plaintiff must plead facts sufficient to give rise to a plausible inference that the search was not reasonably related to legitimate penological interests." *Simmons v. Cripps*, No. 12-cv-1061, 2013 WL 1280268, at *21, 2013 U.S. Dist. LEXIS 49697,

at *62 (S.D.N.Y. Feb. 15, 2013), *adopted by* 2013 WL 1285417, 2013 U.S. Dist. LEXIS 44989 (S.D.N.Y. Mar. 28, 2013). In addressing the claim, the court "must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence*, 566 U.S. at 322–23.

Here, Plaintiff alleges that he was arrested pursuant to a non-felony warrant, arraigned at the Leray Town Court with bail assessed at $500, and transported to the Jefferson County Jail. Although he told a Corrections Officer that his bail was on the way, he was nevertheless strip searched during the intake process. He was required to "remove all his clothes . . . bend at the waist and spread the lobes of his buttocks to allow for visual inspection of the outside of [his] anal cavity." (Dkt. No. 1, at ¶ 32).[3] Plaintiff was also "required to manipulate his genitals to allow for the inspection of the area underneath his scrotum." (*Id.*). Plaintiff acknowledges that "individuals who enter the general population of a local correctional facility can now be strip searched, even in the absence of reasonable suspicion when charged with minor crimes," (Dkt. No. 11, at 6).

To the extent Plaintiff asserts that the circumstances of his case fall into an exception to the holding of *Florence* because he was "'held without assignment to the general jail population and without substantial contact with other detainees'" and did not ultimately enter the general population, the Court disagrees. (Dkt. No. 11, at 6 (quoting *Florence*, 566 U.S. at 338–39)). As Justice Alito stated in his concurrence, the holding in Florence applies to "arrestees *who are*

---

[3] While the visual anal cavity search here was more intrusive than the searches conducted in *Florence*, *see* 566 U.S. at 323–24, and the Court upheld those "search procedures," *id.* at 339, Justice Alito described its holding as covering "visual strip searches not involving physical contact," during which "the arrestees may be required to manipulate their bodies," *id.* at 340, which would appear to cover the search here. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013) (describing *Florence's* holding as permitting "visual body cavity searches"); *but see Fate v. Charles*, 24 F. Supp. 3d 337, 349–50 (S.D.N.Y. 2014) (describing Court's "ultimate holding [as] limited, explicitly, to the searches performed on *Florence*"); Wayne R. LaFave, 3 Search & Seizure § 5.3(c) (5th ed. 2017) ("[I]t is to be doubted that *Florence* should be read as authorizing, as a matter of routine, the much more severe intrusion of a 'visual body cavity search' into the anus or vagina.").

*committed to the general population of a jail*."  *Florence*, 566 U.S. at 341.[4]  Here, following his

arraignment, Plaintiff was not allowed to stay in town court, and was instead transported to the

jail, where he was subject to the strip search policy.  (Dkt. No. 1, at ¶ 31).  Lest there be any

confusion as to the timing of when an inmate may be considered "committed" to general

population, thus rendering such a search constitutionally permissible, Justice Alito went on to

explain that "there are reasonable grounds for strip searching arrestees *before they are admitted*

to the general population of a jail."  *Florence*, 566 U.S. at 341–42 (emphasis added).  Limiting a

facility's ability to thoroughly search an inmate to the time after he or she has been actually

admitted to the general population of the facility would defeat the purpose of conducting such a

search—to prevent concealed contraband from entering the general population of the facility.

  Plaintiff also asserts that this case presents "factual nuances" that create a dispositive

distinction to the circumstances present in *Florence*—namely that there was no reasonable

penological justification for a policy of immediately strip searching detainees who can post bail.

Plaintiff contends that such strip searches are unreasonable because there is a "*de minimus*

alternative" to admitting such detainees to the jail's general population—he alleges that there

was "adequate space in [the] jail booking room to hold detainees for a brief period of time to

allow them to post bail," (Dkt. No. 1, ¶ 22).  *See Florence*, 566 U.S. at 340 (Roberts, C.J.,

concurring) (observing that there was no "opportunity" for the Court to consider the "possibility

of an exception to the rule it announces," where "there was apparently no alternative, if Florence

were to be detained, to holding him in the general jail population").[5]  Plaintiff asserts that the

---

[4] As one court explained, "Justice Alito's concurrence identifies a limitation and potential exception to the *Florence* holding without which Justice Alito would not have joined the opinion of the majority.  Therefore, Justice Alito's concurrence may be viewed as the narrowest ground upon which the majority opinion is founded."  *Haas v. Burlington Cnty.*, 955 F. Supp. 2d 334, 342 (D.N.J. 2013).

[5] One commentator has noted the possibility that, because *Florence's* holding is limited to detainees "who will be admitted to the general population," 566 U.S. at 323, it does "not disturb those lower court holdings to the effect that

jail's strip search policy in this case was not reasonable, but instead was an "exaggerated response" to prison concerns, in light of this easy alternative.  (Dkt. No. 11, at 9 (citing *Turner*, 482 U.S. at 78, 90 (1987))); *see Florence*, 566 U.S. at 341–42 (Alito, J., concurring) (explaining that, for minor criminals, "admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible").  Defendant, on the other hand, asserts that the jail "does not have the space to segregate new detainees alone from the general population."  (Dkt. No. 5-6, at 10–11).  Thus, resolving the issue requires further development of the record and consideration of facts outside of the complaint.

Accordingly, under the individual circumstances alleged, dismissal of the Complaint would be premature at this early stage of the case.  The Court finds that the Complaint adequately states a claim that Plaintiff's Fourth Amendment rights were violated, and Defendant's motion is therefore denied.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to dismiss (Dkt. No. 5) is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 11, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

such a routine intake search is not permissible as to an arrestee who is awaiting release on bond," LaFave**,** 3 Search & Seizure § 5.3(c).  Prior to *Florence*, courts both within the Second Circuit and elsewhere have distinguished between detainees who are able to readily make bail and those who are not.  *See, e.g.*, *Weber v. Dell*, 804 F.2d 796, 801–02 (2d Cir. 1986) (noting that "[j]ail policy appears to subject arrestees to strip/body cavity searches only when the arrestees are unable to make bail immediately and, for reasons such as overcrowding, are moved from the holding cells in which they are initially placed into cells near arraigned inmates"); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1448 (9th Cir. 1991) ("[C]ourts have distinguished between strip searches conducted on detainees awaiting bail, and searches conducted on inmates admitted or about to be admitted to the general jail population.").  The parties have not cited to, and the Court has not found, any post-*Florence* caselaw on this issue.